UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANTHONY M. MATHIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:21-CV-122-PPS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Anthony Mathis, a young man who is now 23 years old, appeals the Social Security Administration's decision to deny his application for Supplemental Security Income benefits. Mathis was born with Marfan Syndrome (a genetic condition that effects connective tissues), and has a number of both physical and mental issues as a result. He has never had a job. His Marfan's causes heart problems (aortic root dilation, hypertrophic cardiomyopathy, and left ventricular diastolic dysfunction), rheumatoid arthritis, and borderline intellectual functioning. [Tr. at 36.][1] An administrative law judge found that Mathis was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform sedentary work with additional restrictions: he could stand 30 minutes at one time, walk 30 minutes at one time, frequently handle, reach, finger, feel and push/pull,

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 13.

occasionally perform postural restrictions, occasionally drive a motor vehicle, and he could have frequent exposure to humidity, wetness, pulmonary irritants, and frequent exposure to extreme cold and extreme heat. [Tr. at 40.]

Mathis challenges the ALJ's decision on three main grounds, but I will focus my attention on one: whether the ALJ properly evaluated Mathis' symptoms. Because I find the ALJ failed to properly evaluate Mathis' symptoms (in particular, she concentrated on what she labeled "conservative and routine treatment," gave short shrift to Mathis' testimony during the hearing, and gave no consideration to the testimony of his father), I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

The ALJ found that Mathis has the severe impairments of Marfan syndrome and borderline intellectual functioning. [Tr. at 36.] Aside from these severe impairments, Mathis has several other challenges associated with his heart, including aortic root dilation, hypertrophic cardiomyopathy, and left ventricular diastolic dysfunction. *Id.* Mathis undergoes diagnostic testing (including echocardiograms, exercise tests, Holter monitoring, EKGs, ECGs, and MRA testing), and the ALJ determined that there has been little progression of these issues. *Id.* Additionally, the ALJ noted a non-medically determinable impairment of rheumatoid arthritis. *Id.*

Let's start with a review of the legal framework. I am not supposed to determine from scratch whether or not Mathis is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is

supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

As recited in the ALJ's opinion, Pursuant to SSR 16-3p, an ALJ should engage in a two-step process to evaluate a claimant's symptoms. [DE 40.] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016). Second, if an underlying impairment that could reasonably be expected to produce the symptoms is established, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* at *2. The ALJ's determination "must contain specific

3

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *9.  Factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  *Id.* at *7.

In this case, the ALJ found Mathis' medically determinable impairments could reasonably be expected to cause the alleged symptoms. [Tr. at 42.]  However, she also used the formulaic recitation that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision."  *Id.*  It is true that courts historically have not overturned the ALJ's credibility determination unless it was "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

While this is certainly a difficult standard to overcome, I find that in this case the ALJ's assessment of Mathis' subjective symptoms was patently wrong.

First, let's look at what Mathis testified to during the hearing. Mathis testified that "I can't work because of my body." [Tr. at 72.] He said his joints - his back, knees, and feet hurt. [*Id.* at 72-73.] Mathis also has a problem with feeling tired - he is tired all the time. [*Id.* at 75.] He worries about his health, he has bad balance, and worries about tripping and falling. [*Id.* at 77-78.] Mathis said when he is out walking, he has to have his parents with him because of his poor balance, and he can only make it about halfway around the block. [*Id.* at 81-82.] He can't walk far because of his joint pain. [*Id.* at 82.] Mathis gets really bad headaches triggered by the heat, and when it is cold, his joints hurt. [*Id.* at 78-79.]

Mathis also testified about mental hurdles. For example, he gets confused about which way is left and which way is right. [*Id.* at 68.] Mathis does not have a cell phone. [*Id.* at 67.] He never goes shopping by himself (his parents have to be with him), and cannot make change at a store. [*Id.* at 71.] Mathis also testified that he has failed his driver's license test 7 times.[2] [*Id.* at 72.]

Mathis' father, Dan Mathis, also testified at the hearing and much of what he said echoed the testimony from his son. According to Mr. Mathis, his son walks slow because his balance is impaired. [*Id.* at 84, 90.] He is forgetful and cannot remember to

---

[2] At the Appeals Council, Mathis submitted evidence of 11 failed Driver's Education tests. [Tr. 20.]

5

tie his shoes. [*Id.* at 87.] He gets tired when doing things like watching TV or playing video games, and he has trouble understanding what he is reading. [*Id.* at 87-88.] His son worries about his health - he worries about whether "he's going to make it [to] the next day or not." [*Id.* at 89.] His son's symptoms are progressing with time. [*Id.* at 91.] His son is not able to get on public transportation by himself as he just wouldn't be able to understand the process. [*Id.* at 93.]

One of the first issues with the ALJ's opinion that jumps out at me is the ALJ makes no reference whatsoever to the testimony of Mr. Dan Mathis, despite the fact that his testimony corroborates Mathis' own testimony about his dependency as well as his limited ability to function independently. "The regulations permit testimony from 'other persons' such as family members without requiring them to have medical training." *Sylvia C. v. Saul*, No. 19 C 0624, 2020 WL 1189290, at *8 (N.D. Ill. Mar. 12, 2020).

There are other problems with the ALJ's analysis of Mathis' subjective symptoms too. One of the main reasons the ALJ discredited Mathis' testimony about his physical symptoms is the ALJ thought he "has received conservative and routine treatment for this impairment [Marfan's syndrome]." [Tr. at 41, *see also* 42.] But, as I mentioned before, Marfan's syndrome is a genetic syndrome effecting the body's connective tissue, that Mathis will have to deal with his whole life. It is unclear to me what more aggressive treatment one would undergo with this condition. *See, e.g., Hurlbut v. Colvin*, No. 15 CV 50270, 2017 WL 497774, at *2 (N.D. Ill. Feb. 7, 2017) ("One of the ALJ's

6

rationales for finding plaintiff not disabled was that his medical treatment was supposedly conservative. The ALJ, however, did not provide a clear explanation for this conclusion . . . The supposedly conservative nature of the treatment is not self-evident to this Court, and the question requires medical expertise to answer."). Mathis is on medication, he has undergone extensive imaging and other tests over the years, and he is being treated at Ann & Robert H. Lurie Children's Hospital of Chicago, the Willis J. Potts Children's Heart Center (an institution recognized as one of the most preeminent in the nation). [Tr. at 19, 656, 719, 781-85, 996, 1008, 1012, 1018, 1024.] I'm just not sure how any of this can be labeled as "conservative."

Here, there is plenty of medical evidence in the record to support the pervasiveness and severity of Mathis' symptoms. For example, the ALJ herself concedes that the "records also document findings of pain and tenderness in the upper and lower extremities, antalgic gait, decreased grip flexion, reduced elbow extension, decreased strength in the upper and lower extremities, as well as mild joint hypermobility." [Tr. at 41-42.] In addition, medical exams show he had reduced elbow extension, mild joint hypermobility, and a decreased arch at the feet. [*Id.* at 620.] Mathis reported being unable to stand for any length of time to two consultative examiners. [*Id.* at 737, 501.] He received custom orthotics for generalized lower extremity soreness. [*Id.* at 772.] His heart issues are also well documented. An exam of the heart showed severe concentric left ventricular hypertrophy [*Id.* at 585] and treatment at Lurie Children's in November 2018 noted "mild aortic root dilation which is stable along with

7

HCM which may be slowly progressive." [*Id.* at 719.] During a test administered at Lurie's, the doctor noted Mathis' symptoms were pain in the knee which was "constant" and "chronic" and that he was unable to grip and maintain 10 pounds with either hand due to decreased/weakening muscle tone. [*Id.* at 767.] The doctor noted the prognosis as "poor - progressive weakening." *Id.* The doctor completed a form finding Mathis could not sit more than four hours per day, stand one hour, had 25% use of the hands, arms and fingers, and would miss more than three days per month. [*Id.* at 767-68.]

There is also significant evidence in the record to contradict that Mathis was capable of functioning within the confines of the ALJ's RFC. First, the ALJ found Mathis could occasionally drive a motor vehicle. [Tr. at 40.] This is astounding considering Mathis has now failed his driver's license examination 11 times. [*Id.* at 20.] Second, the ALJ found Mathis can frequently reach, handle, finger, feel, and push/pull. [*Id.* at 40.] And yet the record reflects that Mathis has significant handling and fingering deficits. [Tr. at 767, 900, 1028.] For example, one assessment noted "[b]ilateral upper extremities have notable decreased grip with flexion. With upper arms elevated, patient unable maintain posture with gravity against position." [*Id.* at 900.] Third, the ALJ found Mathis could have frequent exposure to extreme cold and extreme heat. [Tr. at 40.] However, Mathis was clear that he gets really bad headaches triggered by the heat, and when it is cold, his joints hurt. [*Id.* at 78-79.]

This case is similar to *Shaunta M. v. Kijakazi*, No. 1:20-cv-01947-RLY-DLP, 2022 WL 537757, at *5 (S.D. Ind. Feb. 23, 2022), in which the ALJ discounted the subjective symptom complaints of the claimant (who also had Marfan's syndrome) "because her treatment providers described her as 'healthy appearing, doing well from a cardiac standpoint, asymptomatic, stable, and with no cardiac symptoms present.'" Yet as that court noted, while she might have been stable following successful heart surgeries, the claimant still continued to experience other symptoms. *Id.* The court remanded because "the ALJ failed to explain why the limiting effects of her symptoms are inconsistent with the medical evidence and other evidence in the record." *Id.* at *6.

This case also must be remanded for the analysis of Mathis' subjective symptoms. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding credibility determination where ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness."). On remand, the ALJ should re-evaluate Mathis' subjective symptom statements, and also give due regard to the testimony of his father. As for the other issues raised by Mathis, he can raise those issues directly with the ALJ on remand if he deems it appropriate.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: May 31, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT